## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02826-WYD-CBS

ELHAM SALEMI,

     Plaintiff,

v.

COLORADO PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION;
TIM MOORE, in his official and individual capacities; and
ANGELA SETTER, in her official and individual capacities,

     Defendants.

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND
---

Plaintiff Elham Salemi, by and through her counsel, Darold W. Killmer, Mari Newman, and Danielle C. Jefferis of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her First Amended Complaint and Jury Demand as follows:

### I.     INTRODUCTION

1.     This is an action against Colorado Public Employees' Retirement Association ("PERA"), Tim Moore, Director of PERA's Alternative Investments team, and Angela Setter, Director of PERA's Human Resources, for gender, race, and national origin discrimination; retaliation; and equal pay violations.  Plaintiff Elham Salemi was a successful, highly rated Portfolio Associate and Analyst who worked at PERA for eight years.  She dedicated herself to her career and consistently sought to develop and grow professionally so that she could advance

through the PERA ranks.  However, her determination was halted by Mr. Moore and Ms. Setter who intentionally discriminated and retaliated against her on the basis of her gender, race, and national origin.  Mr. Moore consistently refused to promote Ms. Salemi, despite her strong performance, and regularly promoted white males instead.  Ms. Setter ignored Ms. Salemi's reports of discrimination, and she engaged in her own discrimination and retaliation against Ms. Salemi — on one instance, even pointing out Ms. Salemi's national origin and culture as a basis for her lack of promotion.  Ms. Salemi's salary was dramatically lower than her white male counterparts', and she was denied a number of opportunities that were given to her white male counterparts.  Because of Ms. Salemi's repeated efforts to get her employer to simply treat her equally, including her filing of a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), PERA abruptly fired her.  PERA's discrimination and retaliation have caused Ms. Salemi substantial economic and non-economic damages.

## II.      JURISDICTION AND VENUE

2.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. sections 1331 and 1343.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 2000e, *et seq*.; 42 U.S.C. sections 1981 and 1983; the Family Medical Leave Act, 29 U.S.C. section 2615(a); and the Equal Pay Act of 1963, 29 U.S.C. section 206(d)(1).  Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conferred by 42 U.S.C. section 1988.

3.       The employment practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.  Venue is proper pursuant to 28 U.S.C. section 1391.

### III.     ADMINISTRATIVE PREREQUISITES

4.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and has received her Notice of Right to Sue.  Thus, all administrative prerequisites have been met.

### IV.     PARTIES

5.      Plaintiff Elham Salemi is a resident of and domiciled in the State of Colorado. She is from Iran.  At all times relevant to this Complaint, she was employed by PERA.

6.      Defendant Tim Moore is a resident of and domiciled in the State of Colorado.  At all times relevant to this Complaint, he was employed by PERA.  As the Alternative Investments Director, Defendant Moore was involved in the day-to-day operations of PERA and had direct responsibility for the supervision of Ms. Salemi.

7.      Defendant Angela Setter is a resident of and domiciled in the State of Colorado. At all times relevant to this Complaint, she was employed by PERA. As the Director of Human Resources at PERA, Defendant Moore was involved in the day-to-day operations of PERA and had direct responsibility for the supervision of Ms. Salemi.

8.      Defendant PERA is a statutory pension plan available to most State of Colorado employees.  Pursuant to Colo. Rev. Stat., section 24-51-201(1), it is an instrumentality of the State of Colorado with the right to sue and be sued.  PERA has continuously been an "employer" within the meaning of Title VII at all times relevant to this Complaint.

### V.     FACTUAL ALLEGATIONS

9.      Ms. Salemi began her career at PERA in May 2004 as an intern while she finished graduate school.  In September 2004, after she earned her Master's degree, PERA hired Ms.

Salemi as a Portfolio Associate with the Alternative Investments ("AI") team — a position that opened up because PERA fired the only female AI investment professional, Cynthia Anderson.

10.     Upon information and belief, Ms. Anderson had complained of gender discrimination at PERA just before PERA fired her.

11.     At the time that PERA hired Ms. Salemi, the AI team was comprised of five investment professionals.  Ms. Salemi was the only female investment professional on the team when she was hired and throughout her tenure with PERA.

12.     At the time, Chris Reilly was the AI Director.  As Ms. Salemi's supervisor, Mr. Reilly consistently gave Ms. Salemi positive performance reviews.  From 2004 to 2007, not only did Ms. Salemi receive "fully successful" ratings, she was also recognized for streamlining the operational processes to free up her time so that she could get involved in investment activities.

13.     Ms. Salemi enjoyed the analytic side of investing, and she took considerable initiative to grow and develop professionally so that she could move into successively higher positions within the AI team.  Within AI, PERA's employment structure moves upward from Portfolio Associate to Analyst to Portfolio Manager.

14.     Mr. Reilly left PERA in late 2006.  In January 2007, Jennifer Paquette, Chief Investment Officer, informed Ms. Salemi that Mr. Reilly had discussed promoting her to Analyst and that Ms. Salemi just needed to "bear with her" until PERA replaced Mr. Reilly.  Ms. Paquette also instructed Ms. Salemi that if nothing happened regarding a promotion, Ms. Salemi should remind her about it in July.

15.     In February 2007, Defendant Tim Moore, a Portfolio Manager, was promoted to AI Director.

4

16.     Soon after Mr. Moore's promotion, Ms. Salemi discussed with him her planned promotion to Analyst.  Mr. Moore shrugged his shoulders and told Ms. Salemi to discuss the issue with Ms. Paquette.

17.     As Ms. Paquette had instructed, Ms. Salemi reminded Ms. Paquette about the promotion in July 2007.  Still, no steps were taken in furtherance of Mr. Reilly's months-old recommendation that Ms. Salemi be promoted to Analyst.  To the contrary, Mr. Moore began fabricating excuses as to why Ms. Salemi did not deserve the promotion.

18.     In January 2008, frustrated with the lack of movement a year later, Ms. Salemi spoke with Ms. Paquette again.  Ms. Salemi told Ms. Paquette that Mr. Moore was not providing her with similar opportunities and training in comparison to her white male coworkers.  She also stated that she felt as though she did not have a future with PERA and that she feared retaliation, should Mr. Moore learn of her concerns regarding discrimination.

19.     Ms. Paquette discussed Ms. Salemi's concerns with Mr. Moore at his year-end performance review.  He became increasingly agitated.  Ultimately, Ms. Paquette told Mr. Moore and Ms. Salemi that they needed to communicate better.

20.     Ms. Salemi was extremely frustrated that Ms. Paquette attributed Mr. Moore's discrimination merely to a lack of communication.  She spoke with the EEOC about filing a complaint.  She made an appointment with the EEOC but ultimately cancelled it due to her fear of retaliation and overall stress regarding the situation.

21.     Ms. Salemi's fear was based, in part, on the fact that a former female Senior Administrative Assistant with the AI team had complained to HR in 2006, and, as a result, PERA

transferred her to a different team.  Regarding the woman's transfer, Mr. Moore had said, "PERA's HR always protects the management."

22.     Thereafter, Mr. Moore embarked on efforts to push Ms. Salemi out of PERA.  In February 2008, he told Ms. Salemi about an open Analyst position with a different team.  Just a few days later, he claimed he was working on getting her promoted but used the excuse that he had to get Ms. Paquette's approval on the budgeting before it could actually happen.  This was just a ruse, however, because in the meantime, a white male was promoted to the Analyst position.

23.     In April 2008, Mr. Moore was still trying to get Ms. Salemi out of PERA by making her quit.  He told her that he would send the recommendation for her promotion to Ms. Paquette that month, but, again, he used the excuse that the ultimate decision was Ms. Paquette's.

24.     Investment professionals with PERA are attached to an incentive bonus plan.  Ms. Salemi, as a Portfolio Associate, should have been part of the plan from her date of hire and, therefore, eligible to receive incentive bonuses, but she was not.  Mr. Moore threatened Ms. Salemi that if she did not get approval for the promotion to Analyst before June 30, 2008, she would remain ineligible for the incentive plan.

25.     Ms. Salemi was finally promoted to Analyst on June 2, 2008, more than eighteen months after Mr. Reilly had originally planned to promote her.  In the meantime, all of Ms. Salemi's white male colleagues with similar backgrounds and experience had been promoted.

26.     Upon her promotion, PERA offered Ms. Salemi a salary of $67,008.

27.     Ms. Salemi soon became aware that her compensation was materially lower than the appropriate range for her Analyst position.  She requested from HR representative Adam

6

Franklin the compensation range for her new position.  Although PERA salary ranges had always been public information, Mr. Franklin declined her request and stated that the information could only be disclosed to Ms. Salemi with her Director's consent.

28.     Later that year, PERA hired an outside consulting firm to study the salary rates of all the investment professionals in the entire investment department.  The study concluded that Ms. Salemi's salary was not within the range for PERA Analysts. In fact, she was the only Analyst making an Associate's salary.

29.     To be within the appropriate range, Ms. Salemi's salary would have to be increased to $90,400 — nearly $30,000 more than what PERA was paying her.

30.     Despite being promoted in June 2008, Ms. Salemi did not receive her full increase until November 2009.

31.     Even then, Ms. Salemi learned that PERA was still paying her less than her male counterparts.  For example, according to PERA staff salaries published in 2009, Caucasian Male #2 (on her team) was earning $140,228 with seven years' experience, while Ms. Salemi's base salary was $90, 400 with seven-and-a-half-years' experience.

32.     A lower base salary means a lower commission rate, making the discrepancy between Ms. Salemi's take-home pay and that of her similarly situated male counterparts substantial.

33.     In addition to paying her less than the similarly situated male analysts on her team, PERA began forcing Ms. Salemi to do administrative and operational tasks that were not within her job description, while her white male counterparts did more substantive, important professional work.  Ms. Salemi received less desirable job assignments, whereas the white males

receive job assignments that enabled them to develop and advance.  By giving her these inappropriate and demeaning assignments, PERA was continuing to try to make Ms. Salemi quit her job.

34.     By March 2011, Ms. Salemi had grown even more frustrated with her job duties and the continued discrimination she was forced to endure.  She met with Mr. Moore to go over her 2010 review and 2011 plan.  Ms. Salemi requested to be allowed to do her job in accordance with her job description, instead of doing demeaning, minuscule tasks that were not given to the white males on her team and that did not provide her with the opportunities she needed to develop and grow within her position.  She also asked about her future with PERA, and Mr. Moore responded that, rather than promoting her to Portfolio Manager, he would create a new title called "System *something*."  By all accounts, this would have been a dramatic demotion for Ms. Salemi.  Accordingly, Ms. Salemi refused to sign off on her 2011 plan.

35.     Mr. Moore retaliated with accusations that Ms. Salemi is too "quiet in nature" and that it was not her "forte" to become a Portfolio Manager.  These comments were based, in part, on Mr. Moore's stereotypes of Ms. Salemi's gender, race, national origin, and culture.

36.     Ms. Salemi continued to insist that she be allowed to work as an Analyst with appropriate Analyst job duties.  Mr. Moore responded by assigning her even more minuscule administrative duties.

37.     Mr. Moore's retaliation grew.  He began to ignore Ms. Salemi.  Her requests and complaints went unanswered.  In fact, Mr. Moore would not even greet Ms. Salemi, and he turned his back to her in the hallway when he saw her.  This adverse treatment and retaliation was part of a continuing pattern, as described herein.

38.     In April, Mr. Moore met with Ms. Salemi, purportedly regarding her previous complaints.  However, he said he and Ms. Paquette were unable to come up with a solution to her "problems," and there was "no near future opening on the investment floor" for her.

39.     Shortly thereafter, the female Senior Administrative Assistant on the AI team complained to Mr. Moore than she was made to do personal secretarial work for two male AI investment professionals.  Mr. Moore sternly retorted, "Do not go there with me."

40.     During a weekly group meeting a few days later, Mr. Moore remarked that he "wanted to be an asshole for a few minutes," and he demanded that everyone "mind your business."  It was clear to Ms. Salemi that he was referring to her and the other female who reported unequal treatment just days before.

41.     In May 2011, Ms. Salemi met with Defendant Angela Setter, Director of Human Resources.  Ms. Salemi presented to Ms. Setter her formal written complaint regarding discrimination and unequal pay.  Ms. Salemi outlined specifically the administrative and operational duties she was forced to undertake, which adversely affected her ability to perform her Analyst duties.  Ms. Setter callously responded that if PERA took away Ms. Salemi's administration and operational responsibilities, Ms. Salemi would be left with a part-time job and "PERA does not need a part-time employee."

42.     Ms. Salemi also reported to Ms. Setter her recent conversation with Mr. Moore, during which he accused Ms. Salemi of being too "quiet in nature."  Ms. Setter refused to even acknowledge Ms. Salemi's complaint; instead, she told Ms. Salemi to "sit on the complaint." She added, "This is a male-dominated area.  Take classes."

43.    Ms. Salemi was dedicated to improving herself and rising through the PERA ranks, so she expressed her willingness to take a communication class, as well as any opportunities for training and new assignments to gain the knowledge and skills she needed to move closer to becoming a Portfolio Manager.

44.    Throughout June 2011, Ms. Salemi reemphasized her concerns numerous times to Ms. Setter and Mr. Moore.  She reiterated that she wanted the same opportunities that were given to the white males on her team, citing the examples that she was not allowed to sit on advisory boards or participate in due diligence trips, as her white male counterparts were.

45.    Ms. Setter warned Ms. Salemi that she should not create an adversarial situation at work, and she pressured Ms. Salemi to sign off on her 2011 plan.  She also pointed out Ms. Salemi's national origin by derisively asking her what women in Ms. Salemi's position do in Iran, which indicated that Ms. Setter did not think Ms. Salemi was entitled to move up within the company due to her gender, national origin, and race.

46.    Ms. Setter accused Ms. Salemi of putting Mr. Moore "in a corner" due to her concerns of discrimination.

47.    That same month, Mr. Moore took away Ms. Salemi's only remaining professional development opportunity, and, in its place, gave her even more lower-level operational responsibilities.  Still, rather than address the discrimination, Ms. Setter blamed Ms. Salemi for Mr. Moore's unequal treatment of her, and demanded that she communicate more with him.

48.    When she asked, once again, to be included in more substantive project, Mr. Moore told Ms. Salemi, "I do not want to force the guys to work with you."

10

49.     Due to PERA's discrimination and retaliation against her, Ms. Salemi was forced to take medical leave in July 2011.  She received extensive treatment for work-related stress.

50.     Ms. Salemi filed a Charge of Discrimination on behalf of herself and others similarly situated, and on a class-wide basis, with the EEOC on September 29, 2011 alleging PERA's gender discrimination and equal pay violations.

51.     Ms. Salemi's EEOC Charge is attached to this Amended Complaint as Exhibit A.

52.     Ms. Salemi's EEOC Charge described the gender discrimination that she (the only female analyst on her team) and other female PERA employees experienced, as well as the retaliation they faced after voicing their concerns of discrimination.

53.     Specifically, in addition to detailing the pervasive discrimination she endured, Ms. Salemi's EEOC Charge describes the instance where, when confronted by another female employee voicing concerns of gender discrimination, Defendant Moore retorted, "Do not go there with me."

54.     Ms. Salemi's EEOC Charge also alleges "unequal and unfair training practices within [her] department" and Defendant Setter's excuse that "[t]his is a male dominated area."

55.     Ms. Salemi's filing, and her prosecution of that Charge, of her class-based discrimination Charge with the EEOC was intended to, and did, document and oppose illegal discrimination occurring within an important Colorado State agency, and raised vitally important issues of significant public concern.

56.     Ms. Salemi returned to work on December 19, 2011.

57.     Despite all of her reports and requests for equal treatment, her duties and responsibilities worsened upon her return because she had taken FMLA leave for work-related stress attributed to PERA's discrimination and retaliation against her.

58.     In fact, when the Administrative Assistant was out of the office, Ms. Salemi was forced to work on administrative duties for nearly 100% of her time.  On top of that, Mr. Moore asked her to create a database for a new project — yet another time-consuming administrative task.  No such administrative tasks were given to the white males on the AI team.

59.     During her 2011 performance review, Mr. Moore indirectly accused Ms. Salemi of lying about her description of job duties: he told her that he did not see any evidence as to why the administrative tasks she was forced to do should be taking so much of her time.

60.     Thereafter, Ms. Salemi sent Mr. Moore a weekly report of all of the administrative tasks she had done to justify her time.

61.     On January 16, 2012, Mr. Moore promoted the white male AI Analyst to Portfolio Manager.  He had joined the AI team just one year before his promotion (nearly three years *after* Ms. Salemi joined the team), and his experience and background were similar to Ms. Salemi's.

62.     On or around that same day, Ms. Salemi received the lowest merit pay increase since she began at PERA.

63.     On May 10, 2012, PERA abruptly terminated Ms. Salemi for alleged "unsatisfactory performance."

64.     As stated above, salary data from PERA indicates that PERA paid Ms. Salemi's white male counterparts almost 50% more as a base salary than it paid Ms. Salemi.

65.     As a result of PERA's unlawful, discriminatory conduct, Ms. Salemi has suffered

substantial economic and non-economic damages.

## VI.     STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.**
**Discrimination & Failure to Promote**
(Against Defendant PERA)

66.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set

forth herein.

67.     As an Iranian woman, Ms. Salemi is a member of multiple protected classes under

Title VII.

68.     Defendants treated Ms. Salemi less favorably than her similarly situated white

male counterparts.  Defendants subjected Ms. Salemi to adverse treatment in the terms and

conditions of her employment because of her gender, race, and/or national origin, including but

not limited to denial of promotions, discriminatory terms and conditions of employment, and

termination, as detailed herein.

69.     At all pertinent times, Ms. Salemi performed the functions of her job competently

and was more than qualified for promotions.

70.     Despite her superior qualifications and exemplary job performance, Defendants

refused to promote Ms. Salemi, in whole or in part, because of her gender, race, and/or national

origin.  Instead, Defendants promoted white males to the positions for which Ms. Salemi was

qualified.

71.     Ms. Salemi's gender, race, and/or national origin was a motivating factor in Defendants' refusal to promote her.  Defendants' asserted reasons for refusing to promote her were mere pretext for illegal discrimination.

72.     Defendant PERA is liable for the acts and/or omissions of its agents and employees.  Defendant PERA, either directly or by and through its agents, discriminated against Plaintiff on the basis of her gender, race, and/or national origin and directly and proximately caused her severe injuries, damages, and losses.

73.     Defendant PERA's acts and conduct were committed with malice or with reckless indifference to Ms. Salemi's federally protected rights within the meaning of Title VII.

**SECOND CLAIM FOR RELIEF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.***
**Retaliation**
(Against Defendant PERA)

74.     Plaintiff hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

75.     Ms. Salemi believed in good faith that Defendants discriminated against her on the basis of her gender, race, and/or national origin, as described herein.

76.     Ms. Salemi opposed Defendants' discriminatory treatment by reporting it to Defendants Moore and Setter and by filing her Charge of Discrimination with the EEOC.

77.     As a direct result of Ms. Salemi's opposition to activities prohibited by Title VII, Defendants subjected Ms. Salemi to adverse treatment, including but not limited to requiring her to work in a hostile work environment which materially and adversely affected the terms and conditions of her employment, subjecting her to disparate treatment because of her gender, race

and/or national origin, subjecting her to efforts to adversely affect the terms and conditions of her employment, terminating her, and other discriminatory practices.

78.     Defendants' retaliation against Ms. Salemi arose out of, and was like and related to, the discrimination Ms. Salemi opposed while she was employed, both to her management and to the EEOC.

79.     Defendant PERA is liable for the acts and omissions of its agents and employees. Defendant PERA, either directly or by and through its agents, retaliated against Ms. Salemi and directly and proximately caused her severe injuries, damages, and losses.

80.     Defendant PERA's conduct was engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff within the meaning of Title VII.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Race & National Origin Discrimination under 42 U.S.C. § 1981**
(Against Defendants Moore and Setter in their official and individual capacities)

81.     Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

82.     Title 42 U.S.C. § 1983 ("Section 1983") is the jurisdictional vehicle appropriate to obtain relief against a state actor for a violation of Title 42 U.S.C. § 1981 ("Section 1981").

83.     Section 1981 provides, in pertinent part:

(a)  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .

(b)  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of

15

contracts, and the enjoyment of all benefits, privileges, terms and
conditions of the contractual relationship.

(c) The rights protected by this section are protected against . . .
impairment under color of State law.

84.     Ms. Salemi is an Iranian woman and is thus a member of a protected class under
Section 1981.

85.     Ms. Salemi is and has at all times been qualified to perform her job
responsibilities, and she has performed them at all times at least satisfactorily.

86.     Defendants denied Ms. Salemi the protections against race and national origin
discrimination provided by Section 1981 in the terms and conditions of her employment by
denying her the same benefits, privileges, and terms and conditions of her contractual
employment relationship that her white counterparts enjoyed, and by terminating her.

87.     Ms. Salemi's race and national origin was a motivating factor for Defendants'
actions.

88.     Defendants Moore and Setter's discrimination against Ms. Salemi on the basis of
her race and national origin caused Defendant PERA to terminate Ms. Salemi.

89.     Defendants Moore and Setter are not entitled to qualified immunity for the
complained of conduct.  Defendants' conduct violated clearly established rights belonging to Ms.
Salemi of which a reasonable person in Defendants' positions knew or should have known, as
described more fully herein.

90.     Defendant PERA engaged in national origin discrimination against Ms. Salemi
pursuant to its custom, policy, or practice to promote and otherwise treat more favorably white
employees versus non-white employees.

91.     Defendants' conduct was willful, wanton and in reckless disregard of Ms. Salemi's federally protected rights, and was the proximate cause of significant injuries, damages and losses that she incurred.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Retaliation under 42 U.S.C. § 1981
(Against Defendants Moore and Setter in their official and individual capacities)

92.     Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

93.     Ms. Salemi engaged in activities and speech in opposition to employment practices prohibited by Section 1981 by objecting to and reporting discrimination to Defendants Moore and Setter.

94.     Defendants treated Ms. Salemi more adversely than her similarly situated counterparts who did not voice their opposition to Defendants' discrimination.

95.     Because of Ms. Salemi's objections to discrimination, Defendants subjected her to adverse treatment, including but not limited to requiring her to work in a hostile work environment which materially and adversely affected the terms and conditions of her employment, subjecting her to disparate treatment because of her national origin, subjecting her to efforts to adversely affect the terms and conditions of her employment, terminating her, and other discriminatory practices.

96.     Defendants Moore and Setter's retaliation against Ms. Salemi caused Defendant PERA to terminate Ms. Salemi.  Ms. Salemi's termination constituted the official policy of PERA within the meaning of Section 1983.

97. Defendants Moore and Setter are not entitled to qualified immunity for the complained of conduct. Defendants' conduct violated clearly established rights belonging to Ms. Salemi of which a reasonable person in Defendants' positions knew or should have known, as described more fully herein.

98. Defendant PERA retaliated against Ms. Salemi pursuant to its custom, policy, or practice to adversely treat employees who voice opposition to discrimination and/or harassment.

99. Defendants' conduct was engaged in with malice or with reckless indifference to Ms. Salemi's federally protected rights within the meaning of Sections 1981 and 1983.

100. Defendants' retaliation against Ms. Salemi was the direct and proximate cause of severe injuries, damages, and losses.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Retaliation – First Amendment**
(Against Defendants Moore and Setter in their official and individual capacities)

101. Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

102. Ms. Salemi filed a Charge of Discrimination with the EEOC, conduct which is protected activity under the First Amendment's right to petition the government.

103. The claims raised and prosecuted by Ms. Salemi in her EEOC Charge were not solely related to only her own rights, but rather raised issues of significant public concern and rights affecting other employees, potential employees, taxpayers, and the general public.

104. Ms. Salemi engaged in protected activities of speech and petition under the First Amendment that were not expressed pursuant to her official duties.

105.     Ms. Salemi's First Amendment-protected activity involved a matter of public concern.

106.     Ms. Salemi's interest in commenting on and opposing systemic gender discrimination by her employer against herself and others similarly situated, and on a class-wide basis, and petitioning the government for a remedy for such discrimination outweighs any potential disruptive effect of that speech.

107.     Defendants responded to Ms. Salemi's First Amendment-protected activity with retaliation, including but not limited to, requiring her to work in a hostile work environment which materially and adversely affected the terms and conditions of her employment, subjecting her to disparate treatment because of her gender, race, and national origin, subjecting her to efforts to adversely affect the terms and conditions of her employment, terminating her, and other discriminatory practices.

108.     Ms. Salemi's First Amendment-protected activity was a motivating factor in Defendants' retaliation against her.

109.     Defendants Moore and Setter are not entitled to qualified immunity for the complained of conduct.  Defendants' conduct violated clearly established rights belonging to Ms. Salemi of which a reasonable person in Defendants' positions knew or should have known, as described more fully herein.

## SIXTH CLAIM FOR RELIEF
### Family Medical Leave Act, 29 U.S.C. § 2615(a)
### Retaliation
(Against All Defendants)

110.     Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

111.    Ms. Salemi engaged in FMLA-protected activity when she went on approved medical leave for work-related stress.

112.    Upon her return to work from her FMLA-protected leave, Defendants took actions that a reasonable employee would have found materially adverse, including but not limited to a detrimental decrease in Ms. Salemi's substantive job duties and responsibilities, failure to promote, and termination.

113.    Defendants' actions would likely discourage a reasonable worker in Ms. Salemi's position from exercising her rights under the FMLA.

114.    Defendants Moore and Setter are "employers" within the meaning of the FMLA because both were involved in the day-to-day operations of PERA and had direct responsibility for the supervision of Ms. Salemi.

115.    Ms. Salemi suffered injuries, damages, and losses as a direct and proximate result of Defendants' conduct.

### SEVENTH CLAIM FOR RELIEF
### Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1)
### Wage Discrimination
(Against All Defendants)

116.    Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

117.    Prior to Defendants' retaliation against her, Ms. Salemi was performing a common core of tasks associated with her job that was substantially equal to that of her male counterparts.  She held a job title with a job description and official responsibilities that were substantially equal, if not the same, to that of her male counterparts.

118.    She performed these responsibilities in the same office and with the same skill and efforts as her male counterparts.  The conditions where Ms. Salemi and her male counterparts performed the work were basically the same.

119.    Ms. Salemi's male counterparts were paid more under these circumstances, in violation of the federal Equal Pay Act.

120.    Defendants Moore and Setter are "employers" within the meaning of the Equal Pay Act because both were involved in the day-to-day operations of PERA and had direct responsibility for the supervision of Ms. Salemi.

121.    Defendants' violation of the Equal Pay Act was willful.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.    Declaratory relief and injunctive relief, possibly including reinstatement, as appropriate;

b.    Actual economic damages as established at trial against the individual defendants and as permissible under the Eleventh Amendment;

c.    Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d.    Punitive damages against the individual defendants for all claims as allowed by law in an amount to be determined at trial;

e.    Pre-judgment and post-judgment interest at the highest lawful rate;

f.   Attorney's fees and costs; and

g.   Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 22nd day of January 2014.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*

_____

Darold W. Killmer
Mari Newman
Danielle C. Jefferis
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000

*Attorneys for Plaintiff*